IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LINDA JEFFERSON,

    *Plaintiff,*

vs.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    *Defendant.*

Case No. 12-1358-EFM

**MEMORANDUM AND ORDER**

Plaintiff Linda Jefferson seeks review of a final decision by the Commissioner of Social Security[1] denying her application for disability and disability insurance benefits under Title II of the Social Security Act and supplemental security income under Title XVI of the Social Security Act. Jefferson claims that the Commissioner's decision should be reversed because the Administrative Law Judge (ALJ) erred by failing to base Jefferson's residual functioning capacity assessment on the substantial evidence of record. Because the Court finds that the ALJ did not err in assessing Jefferson's residual functioning capacity, the Court orders that the decision of the Commissioner is affirmed.

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with 42 U.S.C. § 405(g), no further action is necessary.

## I. Factual and Procedural Background

Jefferson was 45 on her alleged disability onset date of October 31, 2009. She completed high school and had worked as a school bus driver, machine operator, and dietary aide. Jefferson was not engaged in substantial gainful activity during the period of review.

In her applications for disability and supplemental security income, Jefferson alleged that she was unable to work because of disability. She alleged that her ability to work was limited by carpal tunnel, tendonitis, swollen hands, asthma, depression, anxiety, high blood pressure, and internal infections. The agency denied Jefferson's application initially and on reconsideration. Jefferson then asked for a hearing before an administrative law judge.

At the administrative hearing in May 2011, Jefferson testified about her medical conditions. A vocational expert also testified that Jefferson could not perform her past work, but she could perform light work in existing jobs in the unskilled labor market. The ALJ's decision reflects that she considered reports from Jefferson's treating physician and psychiatrists, a nurse practitioner, the agency's examiner, the agency's consultant, and Jefferson's mother. The ALJ denied Jefferson's request for benefits.

The ALJ found that Jefferson had not engaged in substantial gainful activity since the alleged onset date. The ALJ also found that Jefferson had the following severe impairments: asthma, history of carpal tunnel syndrome, depression and anxiety. After finding that Jefferson did not have an impairment equivalent to a listed impairment, the ALJ found that Jefferson had the residual functioning capacity to perform a less than full range of light work. The ALJ found that Jefferson was unable to perform any of her past relevant work, but a finding of "not disabled" was directed by the Medical-Vocational Rules. Based on Jefferson's age, education,

work experience, and residual functioning capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Jefferson could perform.

The Social Security Administration's Appeals Council denied Jefferson's request for review in July 2012. Because Jefferson has exhausted all administrative remedies available to her, the Commissioner's decision denying Jefferson's application for benefits is now final and this Court has jurisdiction to review the decision.

## II. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[3] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[4] The Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by substantial evidence.[5] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[6]

---

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (internal quotation marks omitted).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

[5] *Wall*, 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[6] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of 12 months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[7] The ALJ uses a five-step sequential process to evaluate whether a claimant is disabled.[8] The claimant bears the burden during the first four steps.[9]

In steps one and two, the claimant must demonstrate that she is not presently engaged in substantial gainful activity and she has a medically severe impairment or combination of impairments. At step three, a claimant is presumed to be disabled and entitled to benefits if she can show that the impairment is equivalent to a listed impairment.[10] If, however, the claimant does not establish impairment at step three, the process continues. The ALJ assesses the claimant's residual functioning capacity, which is an assessment of what an individual can still do despite his or her limitations.[11] At step four, the claimant must demonstrate that her impairment prevents him from performing his past work.[12] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the claimant's residual functioning capacity.[13] The residual functioning capacity assessment is used to evaluate the claim at both steps four and five.[14]

---

[7] 42 U.S.C. § 1382c(3)(A); *see also id.* § 423(d)(1)(A).

[8] 20 C.F.R. § 404.1520(a); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[9] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Id.*

[11] Social Security Ruling 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

[12] *Lax,* 489 F.3d at 1084; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

[13] *Lax,* 489 F.3d at 1084; *see also* 20 C.F.R. § 416.920(a)(4)(v).

[14] *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

## III. Analysis

Jefferson challenges the ALJ's residual functional capacity (RFC) determination. Jefferson argues that the ALJ erred by failing to conduct the proper analysis. Specifically, Jefferson alleges that the ALJ's decision did not explain the relationship between the RFC assessment and any specific medical evidence or testimony. The Commissioner contends that the ALJ's RFC assessment is supported by substantial evidence.

Jefferson claims that the ALJ committed error by assigning little weight to the opinion of her treating psychiatrist. The treating psychiatrist's report was completed May 22, 2009, and the same report was included in a previous denial. Here, the alleged onset date is October 31, 2009.

The Tenth Circuit has declared that an ALJ should consider a doctor's observations as relevant even if the observations were made from an earlier, previously adjudicated period.[15] The regulations require the ALJ to "consider all evidence in [the] case record."[16] As a result, the failure to acknowledge medical evidence, even if it originated before the onset date, is error.[17] A statement that reflects that evidence from a previously adjudicated period has been considered is sufficient.[18] Such evidence is relevant, but it may be found to be of little relevance.[19]

Here, The ALJ addressed the treating psychiatrist's report as follows:

---

[15] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("Finally, even if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."); *Peck v. Astrue*, 2012 WL 1327789, at *4 (D. Kan. April 17, 2012) ("Thus, a medical opinion expressed several months before an alleged onset date is relevant evidence that must be considered by the ALJ.").

[16] 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).

[17] *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

[18] See *Barnett v. Astrue*, 2011 WL 7101049, at *7-8 (W.D. Okla. Dec. 30, 2011).

[19] See *Hamlin v. Astrue*, 2008 WL 4371326, at *4 (M.D. Fla. Sept. 19, 2008) (noting that it is province of fact finder to weigh all evidence to determine its relevance).

> Included in the record is medical source statement-mental completed by Susan Brewer, M.D. of Comcare on May 22, 2009. Out of 20 areas of function, the claimant had 10 moderate limitations and 10 areas that were not significantly limited (exhibit B20F). It is noted that this assessment was included in the prior denial by Administrative Law Judge in November 2009. This assessment is given little weight as it was completed prior to the current alleged onset date. There is no evidence that Dr. Brewer has treated the claimant recently.[20]

The ALJ's decision is clear that the ALJ considered Dr. Brewer's statement. That is all the ALJ was required to do. The decision acknowledged Dr. Brewer's findings and noted that the statement was completed before the alleged onset date. Even if the ALJ assigned the statement little weight, the decision reflects that the statement was not ignored. Therefore, there is no error.

Jefferson next asserts that the ALJ should have contacted three medical providers for clarification of their opinions rather than dismissing their opinions. The regulations in effect at the time of the ALJ's decision in June 2011 informed claimants that more information must be sought from a medical source in certain situations:

> We will seek additional information or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.[21]

The regulations require the ALJ to recontact a treating physician when the information is inadequate to determine whether the claimant is disabled.[22] The duty to recontact the physician is triggered by the inadequacy of the evidence received from the treating physician, not by the

---

[20] Decision, Doc. 10, Exh. 2 at 16.

[21] 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2011). These regulations were amended effective February 23, 2012.

[22] *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001) (citing version of 20 C.F.R. § 416.912(e) in effect at time); *Peckham v. Astrue*, 780 F. Supp. 2d 1195, 1204 (D. Kan. 2011) (same).

rejection of the treating physician's opinion.[23] For example, this Court has found that an ALJ has a duty to recontact a medical source if an opinion is undated or unsigned.[24] But when a doctor has completed a checklist that indicates mental limitations, the ALJ has no duty to recontact the doctor because that evidence is adequate to evaluate whether the claimant is disabled.[25]

Here, that is what happened with the three medical opinions that Jefferson has raised. Jefferson's family physician, Linus Ohaebosim, completed a checklist form that indicated limitations that were not reflected by his treatment notes. The ALJ concluded that "there is no reason to recontact the doctor for additional evidence or clarification as the assessment was 'adequate' for consideration."[26] Similarly, two mental medical source statements completed by a doctor and nurse practitioner used the same checklist form indicating limitations. The three reports contained all of the necessary information and Jefferson does not point to specific conflicts in the reports that required resolution. Therefore, the evidence was adequate to evaluate whether Jefferson was disabled, and the ALJ had no duty to recontact the medical sources.

Jefferson makes a general challenge to the ALJ's RFC analysis. Jefferson argues that the ALJ's decision did not meet the requirements of Social Security Ruling 96-8p. Under SSR 96-8p, an RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[27] The ALJ must discuss the individual's ability to

---

[23] *White*, 287 F.3d at 908; *Russell v. Astrue*, 506 Fed. Appx. 792, 794-95 (10th Cir. 2012).

[24] *Peckham*, 780 F. Supp. 2d at 1204.

[25] *See Beasley v. Colvin*, 520 Fed. Appx. 748, 752 (10th Cir. 2013) (holding that ALJ had no duty to recontact doctor who completed checklist indicating mental limitations).

[26] Decision, Doc. 10, Exh. 2 at 15.

[27] SSR 96-8p, 1996 WL 374184, at *7.

perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work-related activity the individual can perform based on evidence in the record.[28] An ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved."[29]

Jefferson claims reversible error because "[t]he ALJ's RFC is not explicitly related to any specific medical evidence or testimony, nor did the ALJ provide any type of reasonable narrative discussion as to how the medical evidence supports his arbitrary conclusions."[30] Jefferson quotes the RFC assessment but otherwise does not further explain how the ALJ's decision failed to comply with the requirements of SSR 96-8p. A review of the record shows that the ALJ's physical RFC assessment is consistent with that of the medical opinions from the state agency decision maker and medical consultant.[31] The ALJ properly cited these reports in the decision.[32] Likewise, the ALJ's mental RFC assessment is consistent with that of the state agency's medical consultants.[33] Again, the ALJ properly cited these reports in the decision.[34]

Here, the required narrative discussion is the ALJ's entire discussion of the RFC assessment.[35] It is not necessary to base the RFC assessment on specific statements in medical

---

[28] *Id.*

[29] *Id.*

[30] Pl.'s Social Security Brief, Doc. 11 at 9.

[31] Physical Residual Functional Capacity Assessment, Doc. 10, Exh. 3 at 65-72; Case Analysis, Doc. 10, Exh. 9 at 440.

[32] Decision, Doc. 10, Exh. 2 at 18-19.

[33] Mental Residual Functional Capacity Assessment, Doc. 10, Exh. 9 at 430-32; Case Analysis, Doc. 10, Exh. 9 at 439.

[34] Decision, Doc. 10, Exh. 2 at 19.

[35] See *Teneyck v. Astrue*, 2012 WL 1901285, at *9 (D. Kan. May 25, 2012).

opinions in the record.[36] Rather, "[w]hat is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment."[37] In this case, the ALJ's decision explicitly stated agreement with the medical opinions of the state agency's medical consultants, and the RFC assessment was based on these reports. Further, the ALJ noted that the state agency medical consultants "provided specific reasons for their opinions about the claimant's residual functioning capacity showing that they were grounded in the evidence in the case records, including careful consideration of the claimant's allegations about symptoms and limitations."[38] In sum, the ALJ's decision complied with the requirements of Social Security Ruling 96-8p. The decision was based on substantial evidence of record. Therefore, the Commissioner's decision is affirmed.

**IT IS ACCORDINGLY ORDERED** this 19th day of December, 2013, that the decision of the ALJ denying Jefferson's claim for social security benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[36] *Id*. at *8.

[37] *Id*.; SSR 96-8p, 1996 WL 374184, at *7.

[38] Decision, Doc. 10, Exh. 2 at 19.